# IN THE COURT OF APPEALS OF IOWA

No. 19-0057
Filed February 5, 2020

**BRIAN ANDREESEN,**
        Plaintiff-Appellant,

**vs.**

**CHICAGO, CENTRAL & PACIFIC RAILROAD COMPANY, d/b/a CANADIAN NATIONAL RAILWAY COMPANY,**
        Defendant-Appellee.
_____

        Appeal from the Iowa District Court for Pottawattamie County, Kathleen A. Kilnoski, Judge.


        A plaintiff appeals the district court's denial of his motion for a new trial following a civil jury verdict in favor of the defendant.  **AFFIRMED.**


        Fredric A. Bremseth of Bremseth Law Firm, Minnetonka, Minnesota, and Robert M. Livingston of Stuart Tinley Law Firm, LLP, Council Bluffs, for appellant.

        Kellen B. Bubach and R. Todd Gaffney of Finley Law Firm, P.C., Des Moines, and Charles H. Russell, III of Wise Carter Child & Caraway, P.A., Jackson, Mississippi, for appellee.


        Heard by Tabor, P.J., and Mullins and Schumacher, JJ.

**MULLINS, Judge.**

A plaintiff, Brian Andreesen, appeals the district court's denial of his motion for a new trial following a civil jury verdict in favor of the defendant, a railroad company (CCP). He generally challenges the propriety of the instructions the district court provided to the jury concerning the statute of limitations and discovery rule.

## I.      Background Facts and Proceedings

Andreesen began working for CCP in 1996. He was a healthy twenty-seven-year-old man at the time. While he has worked in different positions over the years,[1] his work has largely involved positions in which he is constantly exposed to environmental forces medical personnel have opined caused the spinal condition precipitating this litigation. From the onset of Andreesen's employment with CCP, riding on trains bothered his back; his back was sore at the end of each day. Andreesen began to experience neck pain in 2005. Sometimes the pain would radiate down his arms. Andreesen visited his physician and was referred to a neurologist, Dr. Quentin Durward. Andreesen visited Durward in September and reported that, in the previous two or three months, he had been experiencing pain in his neck with radiation into his left arm and some numbness and tingling in his left arm and hand. According to Durward, Andreesen did not have a specific injury,

---

[1] Andreesen started as a brakeman. After about six months, he was promoted to the position of conductor. In these positions, Andreesen travelled to and from destinations and assisted train engineers with coupling rail cars. In 1998 he became an engineer. In this position, he operated trains from origin to destination. Andreesen became a trainmaster in late 2000. The record indicates he did not ride on trains in this position. He returned to the position of engineer in mid-2004. In 2011, he continued as an engineer, but his duties were limited to switching out railcars in the train yard.

just a "progressive problem." An MRI revealed compression of the spinal cord in Andreesen's neck, which was caused by degenerated disks and bone spurs. Durward classified Andreesen's condition as degenerative disk disease. Durward completed surgery on Andreesen's cervical spine a few days later. Andreesen's symptoms subsided in the coming months, and he returned to work in January 2006.

In December 2014, Andreesen started experiencing "the same kind of symptoms [he] had before." In mid-January 2015, Andreesen discontinued working.[2] He visited an orthopedic surgeon, Dr. Steven Stokesbary, with complaints of neck and shoulder pain, as well as numbness in his chest, shoulder, arm, and back. Specifically, Andreesen reported he had been suffering from chronic neck pain for the past several years with a recent worsening of his symptoms. Durward testified the neck pain was caused by the degenerative disk disease he had previously diagnosed Andreesen with and treated him for. An MRI showed disk bulging as well as spinal degeneration, which was causing narrowing of the nerve channel in the spinal cord. A regimen of physical therapy and medications was pursued but did not result in relief. A second MRI showed additional problems, so Durward again recommended surgery. Andreesen underwent three surgeries over the next several months, one to the cervical spine in February and two to the thoracic spine in August. Durward took the position that Andreesen's "spine condition has been significantly affected by the job he does." He specifically opined Andreesen's condition amounted to a "cumulative trauma"

---

[2] He has not returned to work since.

resulting from years of working on the railroad.[3]  Andreesen continued to experience pain in his lower back.  Another regimen of non-surgical treatment was pursued as to the lower back but did not result in relief.  A subsequent MRI disclosed the condition of Andreesen's lower back continued to deteriorate as time went on, and Andreesen underwent a surgery to his lumbar spine in September 2016.  Durward opined, as a result of Andreesen's multiple surgeries and ongoing pain, he was "completely disabled."

In November 2016, Andreesen filed a civil petition against CCP under the Federal Employers Liability Act (FELA).  *See* 45 U.S.C. § 51.  The matter proceeded to a trial over seven days in September 2018.  The final day of trial, the court and parties discussed the jury instructions.  The only instructions relevant to this appeal are those concerning the statute of limitations and discovery rule.  Each of the parties had previously submitted their desired instructions.  The court proposed the following instructions:

INSTRUCTION NO. 23

> CCP asserts that the statute of limitations bars Brian Andreesen's claim.  A statute of limitations is a law that provides that a suit is barred if a plaintiff does not bring it within a prescribed period of time.  The time period within which the suit must be brought begins when Brian Andreesen first knew, or by the exercise of reasonable care, should have known that 1) he had spinal injuries and 2) that his injuries were caused by his job.
> On this issue, the burden of proof is on Brian Andreesen.  This means that he must prove, by the preponderance of the evidence, that he was not aware, or in the exercise of reasonable diligence should not have been aware, that he had been injured by his work

---

[3] Another physician, Dr. Eckardt Johanning, who specializes in occupational medicine—specifically spinal injuries caused by whole-body vibrations, which are common in railroad workers—also examined Andreesen in 2016.  Andreesen exhibited a number of spinal abnormalities, which Johanning attributed to the cumulative effects of Andreesen's work environment.

with CCP before November 22, 2013, which is three years before he filed this lawsuit.

INSTRUCTION NO. 24

A person knows or should know he has suffered an injury, for purposes of the statute of limitations, when he first experiences symptoms of that injury. He does not have to experience all the symptoms of the injury, does not have to receive a medical diagnosis, and does not have to have his injury reach maximum medical severity in order for a Plaintiff to be charged with notice of an injury.

Andreesen objected to the latter instruction on legal-correctness grounds, arguing the statute of limitations does not begin "to run when a person first has some symptom," but instead begins to run upon an injury. The court overruled the objection. The first question on the jury's verdict form asked: "Did Brian Andreesen know, or should he have known by using reasonable diligence, that he suffered work-related injuries before November 22, 2013," three years before the filing of his petition? *See id.* § 56. The jury answered that question in the affirmative, and thus concluded Andreesen's claims were barred by the statute of limitations. The court entered judgment in favor of CCP.

Andreesen moved for a new trial, arguing, among other things, the court's jury instructions as to the statute of limitations were erroneous and defense counsel made inappropriate statements in closing arguments magnifying the error in the instructions. Andreesen only challenged the following language in instruction number twenty-four: "A person knows or should know he has suffered an injury, for purposes of the statute of limitations, when he first experiences symptoms of that injury." The court denied the motion, concluding, "There was credible evidence for the jury to find that Plaintiff was not experiencing merely

'intermittent pain associated with a minor injury," and the instructions, when viewed as a whole, did not amount to an incorrect statement of the law. As noted, Andreesen appeals.

**II.     Standard of Review**

Appellate review of a ruling on a motion for a new trial depends on the basis of the motion. *Westco Agronomy Co., LLC v. Wollesen*, 909 N.W.2d 212, 219 (Iowa 2017). Review of challenges to the propriety of jury instructions is a question of law, *Eisenhauer ex rel. Conservatorship of T.D. v. Henry Cty. Health Ctr.*, 935 N.W.2d 1, 9 (Iowa 2019); *State v. Harrison*, 914 N.W.2d 178, 188 (Iowa 2018). Therefore, our review is for correction of errors at law. *See Westco*, 909 N.W.2d at 219. We view jury instructions as a whole and do not consider an erroneous jury instruction in isolation. *Harrison*, 914 N.W.2d at 188.

**III.     Analysis**

On appeal, Andreesen complains instruction twenty-four was an incorrect statement of the law. Specifically, he claims the instruction "incorrectly informed the jury that [he] should have been aware that he was injured when he first felt any symptoms." He complains the instruction does not distinguish between a "'symptom' and 'an actual injury'" and is therefore an incorrect statement of the law.

"No action shall be maintained under [FELA] unless commenced within three years from the day the cause of action accrued." 45 U.S.C. § 56. A FELA "plaintiff has the burden to prove that [his or] her cause of action was commenced within the three year limitations period." *Wilson v. Zapata Off-Shore Co.*, 939 F.3d 260, 266 n.9 (5th Cir. 1991). "A claim accrues under FELA when the plaintiff

possesses sufficient critical facts from which the injury and its cause, including its work-relatedness, should be plainly known." *CSX Trans., Inc. v. Adkins*, 442 S.E.2d 737, 738 (Ga. 1994), *cert. denied* 513 U.S. 947 (1994); *accord Sweatt v. Union Pac. R.R. Co.*, 796 F.3d 701, 707 (7th Cir. 2015). An afflicted employee can be considered "injured" when the cumulative effects of the deleterious condition "manifest themselves." *Urie v. Thompson*, 337 U.S. 163, 170 (1949). "When the injury is not a single traumatic one with immediate symptoms, but rather a latent one with symptoms appearing over time, 'the cause of action does not accrue until the employee is aware or should be aware of his condition.'" *White v. Union Pac. R.R. Co.*, 867 F.3d 997, 1001 (8th Cir. 2017) (quoting *Fletcher v. Union Pac. R.R. Co.*, 621 F.2d 902, 906 (8th Cir. 1980)).

On appeal, Andreesen generally argues the term "symptoms," as used in the district court's jury instruction, is insufficient to manifest an injury. In order to resolve this issue, we have reviewed the points of law dictated in a line of federal cases considering similar factual scenarios, discussed below.

In *Fries v. Chicago & Northwestern Transportation Company*, a plaintiff worked for a railroad company from 1969 to 1987. 909 F.2d 1092, 1093 (7th Cir. 1990). He began experiencing hearing loss and tinnitus in the early 1980s. *Id.* He would need two hours of silence after each work day to recuperate from his symptoms. *Id.* at 1094. He was medically diagnosed with hearing loss in 1985, and he filed a FELA action in 1987. *Id.* The district court granted the employer's motion to dismiss on statute-of-limitation grounds, concluding the claim accrued in the early 1980s. *Id.* On appeal, the plaintiff argued his cause did not accrue until 1985, when he was diagnosed with his "cumulative in nature" injury. *Id.* at 1095.

The Seventh Circuit disagreed, ruling that, "upon experiencing *symptoms* a plaintiff has a duty to investigate both the injury and any suspect cause." *Id.* at 1096 (emphasis added). The court also noted that the fact that the "injury had not reached its maximum severity in 1981 but continued to progress does not affect this result." *Id.*

Similarly, in *Campbell v. Grand Trunk Western Railroad Company*, a plaintiff worked for a railroad company from 1970 to 1995, and then again in 1996. 238 F.3d 772, 773 (6th Cir. 2001). He began experiencing daily numbness and "tingling and some pain" in 1993 or 1994. *Id.* at 775. He filed a FELA action in September 1998, alleging he sustained injuries to his neck and back in 1995 and developed carpal tunnel syndrome. *Id.* at 773–74. The district court granted summary judgment, concluding the plaintiff's "tingling and pain" in 1993 and 1994 was sufficient to put him on notice of his injury. *Id.* at 774. The Seventh Circuit affirmed on the ground that "the plaintiff experienced the *symptoms* of his disorder on a daily basis for several years." *Id.* at 776 (emphasis added).

In another Seventh Circuit case, a plaintiff began working for Union Pacific in 2006 as a general laborer. *Sweatt*, 796 F.3d at 703. In the summer of 2009, he "manifested pain in his shoulder and hands," which "progressed to the point that [he] could no longer do his job." *Id.* at 703–04. He had previously complained about the pain to his employer in May. In November, he sought medical treatment for his symptoms. *Id.* at 704. He filed his FELA action in November 2012. *Id.* at 705. The district court granted the employer summary judgment on statute-of-limitations grounds. *Id.* The Seventh Circuit affirmed, concluding the injury manifested itself as early as May 2009 when the plaintiff began experiencing

shoulder pain. *See id.* at 707. While the court acknowledged "that 'intermittent pain associated with a minor injury' is insufficient to trigger accrual of a claim under FELA," the court concluded that proposition of law did not apply, because the plaintiff's pain was severe, *id.* at 708, which we find analogous to Andreesen's early 2015 report of chronic neck pain for the past several years.

In *White v. Union Pacific Railroad Company*, the plaintiff "first injured his back in a work-related mishap in 1999" but "he healed from that injury '[f]or the most part.'" 867 F.3d at 999 (alteration in original). He began working for a train company two years later; he passed a physical and had no back problems while working for this employer for the next three years. *Id.* He began working for Union Pacific in 2004 and was exposed to environmental forces in his employment similar to those resulting in Andreesen's injuries. *Id.* at 999–1000. In 2010, he first saw a doctor relative to lower-back pain. After seeing other doctors for further treatment, the plaintiff discontinued his employment in 2011. *Id.* at 1000. He filed a FELA action against Union Pacific in 2012 alleging working conditions caused his lower-back problem. *Id.* At trial, the plaintiff "affirmed that beginning in 2007 and 2008" he would experience "pretty bad pain" and knew it to be a result of his working conditions. *Id.* Based on said testimony, the district court granted Union Pacific judgment as a matter of law on statute-of-limitations grounds. *Id.* On appeal, the plaintiff argued "garden variety aches and pains" do not trigger the statute of limitations for a latent injury with symptoms appearing over time. *Id.* at 1001. The Eighth Circuit disagreed, repeating "that '[i]f his back bothered him constantly from [an earlier date], his cause of action accrued on that date.'" *Id.* (alteration in original) (quoting *Fletcher*, 621 F.2d at 907 n.7).

While we agree with Andreesen that the first sign of occasional symptoms and de minimis symptoms do not trigger manifestation of an injury, *see, e.g.*, *Sweatt*, 796 F.3d at 708; *Green v. CSX Transp., Inc.*, 414 F.3d 758, 764–65 (7th Cir. 2005); *Fonseca v. Consol. Rail Corp.*, 246 F.3d 585, 591–92 (6th Cir. 2001), that is not what the evidence in this case shows. What the evidence does show is that Andreesen generally experienced back pain throughout his employment with CCP, he underwent a major spinal surgery in 2005, his back issues were a progressive problem, and when he sought medical treatment in late 2014 and early 2015, he had been experiencing chronic back pain for several years. At the end of the day, "a plaintiff does not need to know the full extent of the injury before the statute of limitations begins to run." *Rathje v. Mercy Hosp.*, 745 N.W.2d 443, 461 (Iowa 2008). It is unquestionable that "symptoms experienced . . . can be sufficient to alert a reasonable person to the existence of the injury." *Id.* at 462.

We thus affirm the district court's use of the term "symptoms" in its jury instruction. We turn to the court's preceding use of the term "first" in instruction twenty-four. As noted, we agree that the first sign of occasional and de minimis symptoms do not trigger manifestation of an injury. *Sweatt*, 796 F.3d at 708; *Green*, 414 F.3d at 764–65; *Fonseca*, 246 F.3d at 591–92. We thus agree that use of the term "first" in the instruction was error. But that does not end our analysis. Instruction twenty-three required two elements for application of the statute of limitations—that he knew or should have known (1) he had spinal injuries and (2) they were work related. Instruction twenty-four only advised the jury on the former element, that Andreesen knew or should have known he suffered an injury. It had no bearing on work-relatedness. Thus, the jury's finding that

Andreesen knew or should have known of work-relatedness more than three years before he filed his lawsuit, was not affected by instruction twenty-four. The work-relatedness finding necessarily requires an accompanying conclusion that he knew or should have known he suffered an injury. Reversal for instructional error is only required if the error resulted in prejudice. *Rivera v. Woodland Res. Ctr.*, 865 N.W.2d 887, 903 (Iowa 2015). Here, the jury's finding that Andreesen knew or should have known of work-relatedness, which was not affected by the erroneous instruction, cures any prejudice.

Further, while Andreesen downplays the severity of his injuries and argues he "did not have any neck or back injury until his surgeries in 2015 and 2016," that statement is a far cry from what the evidence presented at trial really shows. Upon our review of the evidence and divination of what the jury would have done had the term "first" been omitted from the instruction, we agree with CCP that no reasonable jury could have found Andreesen was unaware of his condition prior to three years before the filing of his petition; the evidence that Andreesen knew or should have known of his injury was overwhelming. *See id.* ("Harmless error may be found . . . if the record affirmatively establishes that a party has not been injuriously affected by the alleged error or that there has been a miscarriage of justice."). While Andreesen did not understand the concept of whole-body vibrations and their causes, he was exposed daily to the environmental forces of his employment—jolts, shocks, other jarring, and getting whiplash all the time. He was completely healthy when he started working for CCP, but he experienced back pain from the onset of his employment. It got so bad that, in 2005, he underwent spinal surgery. He reported in late 2014 or early 2015 that he experienced chronic

back pain for several years prior. Under the facts and circumstances of this case as presented to the jury, we find the instructional error harmless.

Finally, we turn to Andreesen's complaints about defense counsel's statements concerning the complained-of instruction in closing argument. We agree with CCP that Andreesen has failed to preserve error on his claims. "When an improper remark is made by counsel in the course of jury argument, it is the duty of the party aggrieved to timely voice objection." *Kinseth v. Weil McLain*, 913 N.W.2d 55, 67 (Iowa 2018) (quoting *Andrews v. Struble*, 178 N.W.2d 391, 401 (Iowa 1970)). Alternatively, a complaining party can object in a motion for mistrial made before submission of the matter to the jury. *Id.* Neither was done here, so error was not preserved.

## IV.     Conclusion

We affirm the district court's use of the term "symptoms" in its jury instruction as a correct statement of the law. We find the court's preceding use of the term "first" to be error. However, we find the instructional error harmless and thus affirm the denial of Andreesen's motion for a new trial.

**AFFIRMED.**